# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| QUINTIN RICARDO JENKINS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | **Case No.  4:15-CV-8003-SLB** |
| vs. | ) | **Crim. Case No. 4:09-CR-0267-SLB-HGD** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent, | ) | |

## MEMORANDUM OPINION

This case is currently pending before the court on petitioner Quintin Ricardo Jenkins's Motion to Vacate.  (Doc. 1, crim. doc. 37.)[1]  The Government has filed a Response and Motion to Dismiss.  (Doc. 6.)  Jenkins did not file a reply to the Government's Response and Motion to Dismiss.  For the reasons set forth below, the court finds that the Government's Motion to Dismiss is due to be granted and Jenkins's Motion to Vacate will be dismissed as untimely filed.  In the alternative the court finds that Jenkins's Motion to Vacate is due to be denied on its merits and his petition is due to be dismissed.

## I.  BACKGROUND

The following facts are set forth in Jenkins's Plea Agreement –

---

[1]Citations to documents in the court's record in petitioner's Motion to Vacate appear as "(Doc. __)."  Citations to documents in the court's record in the criminal proceedings against petitioner, Case No. 4:09-CR-0267-SLB-HGD, appear as "(Crim. Doc. __)."  Page number citations refer to the page numbers assigned to the document by the court's CM/ECF electronic filing system.

On June 15, 2009, at approximately 9:05 am, Quintin Ricardo Jenkins entered the Colonial Bank located at 401 Broad Street in Gadsden, Etowah County, Alabama wearing blue jeans, a polo shirt, and glasses. Jenkins approached a bank teller and handed her a note that read, "This is a bomb. Give me all your money. I have the remote in my hand." After viewing a black object resembling a remote in Jenkins['s] hand, the teller adhered to his request and placed all the money from her teller drawer along with bait money and a dye pack in a bag before handing the bag to Jenkins. After taking approximately $6,412.00 in United States Currency from the teller, Jenkins walked out the front door of the bank and drove away in a maroon van.

Agent Garnett of the Federal Bureau of Investigation reviewed the surveillance photographs from the bank robbery and subsequently released these images of the suspect and a description of the maroon van used in the bank robbery to the local Gadsden, Alabama media. After the surveillance photographs from the bank were published, multiple people, including Jenkins'[s] wife, mother and uncle, called and notified law enforcement that Jenkins was the suspect depicted in the photograph. Jenkins'[s] wife also confirmed that Jenkins drove a maroon van identical to the getaway vehicle seen driven by the Colonial Bank robber. Agent Garnett reviewed Jenkins photograph in a law enforcement database and positively identified him as the same individual in the bank surveillance photographs.

Law enforcement received information that Jenkins was staying at a location in Huntsville, Alabama with a female friend. Agents with the Federal Bureau of Investigation went to the location and were met by Jenkins. When approached by the agents, Jenkins stated that he knew agents were there because he had robbed the bank. During the search incident to arrest, law enforcement found a bag and a wallet in Jenkins['s] possession containing dye stained money from the bank robbery. Jenkins was taken into custody and transported to the local jail.

(Crim. doc. 27 at 2-3.) At the plea colloquy, Jenkins testified that these facts were "substantially correct." (Crim. doc. 38 at 16-18.)

On July 1, 2010, the United States filed a single-court Indictment against Jenkins, which charged him as follows:

That on or about the 15th day of June, 2009, in Etowah County, within the Northern District of Alabama, the defendant,

QUINTIN RICARDO JENKINS,

did knowingly, intentionally, and unlawfully, by force, violence and intimidation take from the person and presence of another, money, that is United States currency, belonging to and in the care, custody, control, management and possession of Colonial Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and in committing said offense, did assault or put in jeopardy the life of another person by the use of a dangerous weapon, in violation of Title 18, United States Code, Sections 2113(a) and (d).[2]

(Crim. doc. 8 [footnote added].)

---

[2]Section 2113(a) and (d) state:

a)  Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association . . .

. . .

Shall be fined under this title or imprisoned not more than twenty years, or both.

. . .

(d)  Whoever, in committing, or in attempting to commit, any offense defined in subsection[ ] (a) . . . of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined under this title or imprisoned not more than twenty-five years, or both.

18 U.S.C. § 2113 (a) and (d).

Following the Indictment, Jenkins's counsel requested, and was granted, funds for the purpose of obtaining an independent psychological evaluation. (Crim docs. 10 and 11.) The court also ordered an examination of Jenkins by a forensic psychologist. (Crim. doc. 24.) The forensic psychologist reported –

> On August 19, 2009, Quentin Ricardo Jenkins was interviewed and assessed in accordance with a Court Order signed by the Honorable Harwell G. Davis, III, Magistrate Judge of the United States District Court for the Northern District of Alabama. Jenkins has been charged with Bank Robbery.

> Jenkins remained cooperative and sufficiently attentive for completion of the evaluation. Given his level of cooperation and the availability of collateral data the following opinions are rendered with a reasonable degree of psychological certainty.

> The defendant reportedly has a history of psychiatric intervention commencing around twenty-five years ago and he has been diagnosed with Schizoaffective Disorder. Presently, he is prescribed psychotropic medication for treatment of this disorder and he was psychiatrically stable at the time of this evaluation. The defendant's history also is remarkable for criminal activities, mainly robbery[,] for which he has been incarcerated.

> With regard to his competence to stand trial it is my opinion that Jenkins is aware of his charge and the allegations against him. Similarly, he has a good understanding of the potential consequences of his legal situation, roles of courtroom participants and of common court related procedures including plea bargaining process. Notably, Jenkins has been involved ;n court-related procedures previously and apparently without difficulty. During this evaluation he claimed to be willing to work with counsel and anxious to proceed with the disposition of his case. He demonstrated no difficulty in communicating and provided a personal version of the alleged incident that was logical and coherent. His ability to serve in such role will be dependent on continued compliance with prescribed medication.

> As to his mental state at the time of the alleged offense it is my opinion that despite history of a serious mental illness Mr Jenkins was at the time in question[,] and in regard to the specific behaviors in question, able to

understand and appreciate the nature and wrongfulness of his actions and could distinguish right from wrong.

(Crim. doc. 26 at 7.) Following the filing of this report, Jenkins notified the court of his intention to plead guilty pursuant to a Plea Agreement.

At the Plea Colloquy, the court discussed the forensic psychologist's report and Jenkins's mental state:

[THE COURT:] Let me ask you, Mr. Tuten, [defendant's counsel] based on your interaction with your client, do you agree with [the forensic psychologist's] assessment?

MR. TUTEN: Well, Judge, I'm certainly not a doctor, but I do agree with the assessment.

THE COURT: And let me ask more specifically, do you agree with her assessment that he is competent now to enter a plea of guilty and to assist you in his defense should he decide to go to trial?

MR. TUTEN: Yes, ma'am.

THE COURT: That's really the only questions I think I want to ask you.

. . .

THE COURT: . . . [B]ased on [the forensic psychologist's] report and defendant's counsel's belief that he is able to assist him in his defense and that he is competent to enter this plea of guilty, [the court finds] that [Jenkins] is, in fact, competent to enter his plea of guilty.

. . .

THE COURT: Within the past 72 hours, have you taken or received any medication, drugs or narcotics?

THE DEFENDANT: Yes, ma'am.

5

THE COURT:  Could you tell me what those are?

THE DEFENDANT:  Haldol and Cogentin.

. . .

THE COURT:  Haldol, is that an antipsychotic? What is that medicine?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Tell me what you understand it to be.

THE DEFENDANT:  Well, I have a sleeping disorder, and it helps with the sleeping disorder and paranoia.

THE COURT:  And the other medication as well?

THE DEFENDANT:  Side effects.

. . .

THE COURT:  Cogentin does what again?

THE DEFENDANT:  For side effects.

THE COURT:  Side effects of the Haldol?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Is there anything about either of those medications, Mr. Jenkins, that would cause you to be unable to appreciate what you're doing here today, pleading guilty to a serious felony offense?

THE DEFENDANT:  No.  They help me.

(Crim. doc. 38 at 4, 10, 12-13.)

At sentencing, defense counsel argued that Jenkins was competent but "his capacity to fully appreciate the consequences of his actions [was] diminished in some way" by his

mental illness. (Crim. doc. 39 at 6.) He noted Jenkins was "not a problem" when he took his medication, but he quickly "went down hill" when he did not take his medication. (*Id*. at 7.) Noting that his compliance with his medication could not be guaranteed and his history of violent crimes, the court held, "I can't go along with your request [for a low-end Guideline sentence] here. I think looking at [Jenkins's] history, and I'm not disputing that he has mental issues, but I think the government's recommendation [of 216 months] is reasonable." (*Id*. at 8, 14.) The court sentenced Jenkins to 216 months imprisonment and held that "a lengthy sentence of this nature is needed to protect the public from further crimes of the defendant. [Jenkins's sentence is] adequate to deter criminal conduct by him," and "the history and characteristics of the defendant to me warrant this kind of a sentence." (*Id*. at 15.) The court did not consider Jenkins's race in determining the appropriate sentence.

The court entered its Judgment in this case on April 28, 2010. (Crim. doc. 32.) In his Plea Agreement, Jenkins waived his rights to appeal and to collaterally challenge his conviction and sentence, (crim. doc. 27 at 5-7); he did not file a direct appeal of his Judgment. Therefore, the Judgment in this case became final on May 12, 2010.

The deadline for filing a Motion to Vacate pursuant to § 2255 was May 12, 2011. *See* 28 U.S.C. § 2255(f)(1)("A 1-year period of limitation shall apply to a motion under [28 U.S.C. § 2255]. The limitation period shall run from the latest of – (1) the date on which the judgment of conviction becomes final . . . ."). On March 22, 2011, Jenkins filed a "Motion for Extension of Time to File § 2255," (crim. doc. 34), and a "Motion to Proceed In Forma

Pauperis," (crim. doc. 35).[3]  He asked the court to provide him a transcript of his sentencing

proceedings and a copy of his Judgment without cost and to extend the one-year deadline for

filing a § 2255 Motion to Vacate to allow him time to receive and review these documents.

The court denied the Motions on March 31, 2011, noting that "a federal inmate is not entitled

to a free transcript to aid in preparation of a § 2255 petition," and, "[i]f the records, once

obtained after the filing of any § 2255 motion through the Government's response, disclose

possible grounds for additional claims, a collateral challenge may be timely amended to

assert any new claims."  (Crim. doc. 36 at 1-2.)  Jenkins did not timely file a § 2255 Motion

to Vacate.

On February 6, 2015, almost five years after the Judgment in this case was entered,

Jenkins filed the instant § 2255 Motion to Vacate.  (Doc. 1; crim. doc. 37.)  He contends that

he is entitled to equitable tolling of the one-year deadline because "he has not sat on his

rights[,] but due to his mental impairment he has been competently unable to assert them, and

---

[3]Jenkins signed the Motions on March 22, 2011.  The court deems the Motions filed
on this date pursuant to the prison mailbox rule.

> "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed
> filed on the date it is delivered to prison authorities for mailing."  *Williams v.*
> *McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009).  "Absent evidence to the
> contrary," [the court] "assume[s] that [the prisoner's filing] was delivered to
> prison authorities the day he signed it."  *Washington v. United States*, 243 F.3d
> 1299, 1301 (11th Cir. 2001).

*Daker v. Comm'r, Georgia Dep't of Corr.*, 820 F.3d 1278, 1286 (11th Cir. 2016), *cert. denied*
137 S. Ct. 1227 (2017).

could not have brought this petition any earlier." (Doc. 1 ¶ 5.) He contends that he is

entitled to immediate release on the grounds that –

> 1.    Petitioner Quintin Ricardo Jenkins was convicted upon an involuntary and unconstitutional [plea] of guilty to the indictment that charged him with one (1) count of bank robbery in violation of Title 18 of the United States Codes Section 2113(a).

> 2.    Petitioner appeared in Court and was appointed an attorney. He had and has an extensive mental health history and was suffering from a major mental illness when proceedings were instituted. His lawyer did not accurately present this to the Court and failed to explore insanity at the time of the [offense] and petitioner was, in fact, not guilty of the charge based on this valid defense and but . . . for his lawyer's unprofessional and ineffective assistance, he would [have] presented the issue and been acquitted by the Court under 18 U.S.C. section 4243.

> 3.    The Court imposed an 18 year sentence upon petitioner who, under 18 U.S.C. Section 4241 should [have] been committed to the custody of the Attorney General because there was a reasonable basis to believe that he may not [have] been competent to stand trial and able to assist counsel and a psychiatric evaluation was mandatory and counsel should [have] filed a motion for such and his not so doing denied petitioner of a fair trial and effective assistance of counsel under the Sixth Amendment of the United States Constitution and for that reason his plea is void and conviction invalid.

> 4.    Petitioner now comes before the Court with an unjust sentence of 18 years. The sentence is excessive in that he was sentenced to more imprisonment based on race, not the crime. 18 years is excessive because [C]aucasian defendants charged with a simple, harmless ["]note["] robbery are not given anywhere near 18 years. This is discriminatory punishment imposed by the Court. The Court should have imposed a sentence of no more than Five (5) years.

(*Id.* ¶¶ 1-4, 6.)

In response to Jenkins's Motion to Vacate, the Government argues that the Motion is due to be dismissed as time-barred and that Jenkins's claims are without merit. (*See generally* doc. 6.)

## III.  DISCUSSION

### A.  MOTION TO DISMISS

Jenkins alleges, "This motion comes late and beyond the one year time limitation but petitioner hereby invokes the doctrine of equitable tolling and asks the Court to apply it to the circumstances presented.  Petitioner asserts he has not sat on his rights but due to his mental impairment he has been competently unable to assert them, and could not have brought this petition any earlier." (Doc. 1 ¶ 5.)  The Government has moved to dismiss Jenkins's Motion to Vacate as untimely filed. (*See* doc. 6 at 6.)  For the reasons set forth below, the court finds that the Motion to Vacate is due to be dismissed as untimely filed.

Jenkins contends that he is entitled to equitable tolling based on his mental impairment.  "As a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez*, 134 S. Ct. 1224, 1231-32 (2014)(citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  "To be entitled to equitable tolling, [Jenkins] must show [both] '(1) that he has been pursuing his

rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007)(quoting *Pace*, 544 U.S. at 418).

Jenkins contends that he could not timely file his Motion to Vacate because of his mental impairment.

> To prevail on such a claim in this context, a petitioner must first make a "factual showing of mental incapacity," *Lawrence v. Florida*, 549 U.S. 327, 337 (2007), but, even then, "mental impairment is not *per se* a reason to toll a statute of limitations." *Hunter*, 587 F.3d at 1308. Rather, a petitioner is required to establish that a mental impairment "prevented him from understanding his rights and obligations under [§ 2255] and acting upon them in a timely fashion." *Id.* at 1309. That is, a petitioner must make a showing sufficient to demonstrate that "a causal connection exists between his mental incapacity and his ability to file a timely [§ 2255] petition." *Id.*at 1310; *see also Lawrence v. Florida*, 421 F.3d 1221, 1226 (11th Cir. 2005), *aff'd*, 549 U.S. 327 (2007). Finally, a petitioner with a mental impairment must also demonstrate that he acted with "an appropriate degree of diligence for someone in his situation." *Myers v. Allen*, 420 Fed. Appx. 924, 927 (11th Cir. 2011)(quoting *Dodd v. United States*, 365 F.3d 1273, 1283 (11th Cir. 2004)).

*Thomas v. State of Alabama*, No. CV 14-S-1984-W, 2016 WL 5724697, at *2–3 (N.D. Ala. Sept. 30, 2016). Therefore, "To justify equitable tolling, [Jenkins] would have to show that extraordinary circumstances existed throughout the period." *Harris v. United States*, 627 Fed. Appx. 877, 881 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 1831 (2016). "A **conclusory** claim that a petitioner's mental health contributed to his failure to file a timely federal habeas corpus claim does not justify the equitable tolling of the limitation period." *Nichols v. Upton*, No. 1:08-CV-2822-TWT, 2009 WL 1545828, *5 (N.D. Ga. May 29, 2009)(citing *Lawrence v. Florida*, 421 F.3d 1221, 1227 (11th Cir. 2005), *aff'd*, 549 U.S. 327 (2007); *United States*

*v. Sosa*, 364 F.3d 507, 513 (4th Cir. 2004); *Fisher v. Gibson*, 262 F.3d 1135, 1145 (10th Cir. 2001))(emphasis added); *see also Thomas*, 2016 WL 5724697 at *2-3 ("Petitioner's generalized assertions that he has a mental impairment for which he has taken medication and received treatment fail to support either that any such impairment actually caused him to be unable to file his federal habeas petition on time, or that he has acted with reasonable diligence for someone in his circumstances."); *Foreman v. Jones*, No. 2:14-CV-0785-RDP-JEO, 2015 WL 5607725, *3 (N.D. Ala. Aug. 3, 2015)("Foreman's generalized allegation that he is being treated for schizophrenia fails to support either that his mental impairment actually caused him to be unable to file his federal habeas petition on time or that he has acted with reasonable diligence for someone in his circumstances."), *report and recommendation adopted*, No. 2:14-CV-785-RDP-JEO, 2015 WL 5580160 (N.D. Ala. Sept. 22, 2015).

Moreover, the record belies Jenkins's conclusory allegation that he has been unable to file his Motion to Vacate despite reasonable diligence. The record establishes that Jenkins has a severe mental impairment, Schizoaffective Disorder, that, historically, has been controlled effectively with medication. (Crim. doc. 26 at 7; crim. doc. 39 at 5, 7.)

On June 15, 2010, following his conviction and sentence, Jenkins was sent to MCR – McCreary USP, where "[h]is psychological stability for custody [was] judged to be FAVORABLE." (Doc. 6-6 at 1 [emphasis in original].) He continued to be psychologically stable until he stopped taking his medication sometime around September 7, 2010. (*Id*. at

4-5.) At that time, he "began to decompensate," becoming "increasingly agitated, paranoid and delusional." (*Id*. at 5-7.) He resumed taking his medications and his condition stabilized. (*Id.* at 15.)

Jenkins began refusing his medications, again, on March 19, 2011. (*See id*. at 29), slightly less than two months before the May 12, 2011, deadline for filing his Motion to Vacate. On or about March 22, 2011, he filed a "Motion for Extension of Time to File § 2255," (crim. doc. 34), and a "Motion to Proceed In Forma Pauperis," (crim. doc. 35), 51 days before the deadline for filing his Motion to Vacate. These Motions were denied on March 31, 2011. (Crim. doc. 36.) By April 1, 2011, Jenkins's mental condition had deteriorated to the point he was placed in the Special Housing Unit. (Doc. 6-1 at 1; doc. 6-6 at 32.)

While in the Special Housing Unit, Jenkins's "behavior continued to deteriorate." (Doc. 6-1 at 1.) As a result, he was given an injection of Haldol and transferred to U.S. Medical Center for Federal Prisoners Springfield for a mental health evaluation. (*Id*.) He arrived at Springfield on April 20, 2011, (*id*. at 4), 22 days before the deadline for filing his Motion to Vacate. At this time, Jenkins was found to be "acutely psychotic and gravely disabled." (*Id*. at 5.) He received anti-psychotic medications and steadily improved. (*Id*.) From June 2011 until August 2013 –

> Jenkins [was] generally . . . compliant with psychiatric medication. When he was on a therapeutic dose of anti-psychotic medication, the inmate presented as cheerful. He maintained a clean room and showered regularly. He ate his

meals regularly and slept normally. He routinely attended outside recreation. Staff did not observe him engaging in any unusual behaviors.

(*Id*.)

The court finds that during this two-year period, Jenkins's mental impairment was not an "extraordinary circumstance" that prevented the filing of a Motion to Vacate. *Lawrence*, 549 U.S. at 336.

In August 2013, Jenkins again stopped taking his medications and "[h]is mental status immediately began to deteriorate." (*Id*. at 5-6.) Thereafter, he was "sporadically compliant with psychiatric medication." (*Id*. at 6.) Sometime between October 2013 and June 2014, a court issued a civil-commitment order, and Jenkins received "treatment with involuntary anti-psychotic medication." (*Id*.) "His mental status improved dramatically after he began taking psychiatric medication regularly." (*Id*. at 7.)

He filed the instant Motion to Vacate on February 2, 2015. (Doc. 1.)

Based on his mental health records, the court finds significant periods of time during which Jenkins's mental status was not an "extraordinary" condition that stood in his way and prevented the filing of his Motion to Vacate. *Lawrence*, 549 U.S. at 336. On the deadline for filing, May 12, 2011, the record shows that Jenkins was in a psychotic state, which the court assumes was an extraordinary condition that prevented him from filing his Motion to Vacate despite reasonable diligence.[4] However, this condition existed only until June 2011

_____

[4]The court has assumed that Jenkins's deteriorating mental state was a circumstance beyond his control even though the record is clear that his mental incapacity was the result

14

and, until August 2013, the record shows that Jenkins's mental condition was stable and not an impediment to his filing a Motion to Vacate. Therefore, the court finds tolling of the statute of limitations is warranted only for a period of 60 days or until July 12, 2011. Jenkins has offered no argument or evidence to show why he was unable to file his Motion to Vacate during this period.

The court finds Jenkins has not proven that his mental condition prevented him from filing this Motion to Vacate during the entire period before February 2, 2015. *See Lawrence*, 421 F.3d at 1226-27; *Doe v. United States*, 469 Fed. Appx. 798, 800-01 (11th Cir. 2012); *Myers*, 420 Fed. Appx. at 927-28; *Fox v. McNeil*, 373 Fed. Appx. 32, 34 (11th Cir. 2010). Therefore, his Motion to Vacate was untimely filed and the Government's Motion to Dismiss, (doc. 6), will be granted.

## B. MERITS OF THE MOTION TO VACATE

### 1. Section 2255 Standard

"[A] § 2255 movant 'bears the burden to prove the claims in his § 2255 motion.'" *Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017)(quoting *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015); other citations omitted). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Bryant v. United States*, No. 5:07-

of his voluntary refusal to take his psychiatric medication.

15

CR-0205-SLB-PWG, 2014 WL 519619, *7 (N.D. Ala. Feb. 10, 2014)(quoting *Richards v. United States,* 837 F.2d 965, 966 (11th Cir. 1988) and citing *LeCroy v. United States*, 739 F.3d 1297, 1321 (11th Cir. 2014) and *Greene v. United States,* 880 F.2d 1299, 1301 (11th Cir. 1989))(internal quotations and citations omitted).

When a habeas petitioner has been convicted based on a plea of guilty and he makes "statements under oath at a plea colloquy, 'he bears a heavy burden to show his statements were false.'" *Winthrop-Redin v. United States*, 767 F.3d 1210, 1217 (11th Cir. 2014)(quoting *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988)(per curiam)). His "solemn declarations in open court carry a strong presumption of verity." *Id*. (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Also his guilty plea waives all but certain, well-defined claims:

> After a criminal defendant has pleaded guilty, he may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only raise [1] jurisdictional issues, *United States v. Patti,* 337 F.3d 1317, 1320 (11th Cir. 2003), *cert. denied,* 540 U.S. 1149, 124 S. Ct. 1146, 157 L. Ed.2d 1042 (2004), [2] attack the voluntary and knowing character of the guilty plea, *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973); *Wilson v. United States,* 962 F.2d 996, 997 (11th Cir.1992), or [3] challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty, *United States v. Fairchild,* 803 F.2d 1121, 1123 (11th Cir.1986). In other words, a voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. *Mary v. Johnson,* 467 U.S. 504, 508 (1984). A guilty plea must therefore stand unless induced by misrepresentation made to the accused person by the court, prosecutor, or his own counsel. *Mary,* 467 U.S. at 509, *quoting, Brady v. United States,* 397 U.S. 742, 748 (1970). If a guilty plea is induced through threats, misrepresentations, or improper promises, the defendant cannot be said to have been fully apprised of the consequences of the guilty plea and may

16

then challenge the guilty plea under the Due Process Clause. *Mary,* 467 U.S. at 509. *See also Santo Bello v. New York,* 404 U.S. 257, 92 S. CT. 495, 30 L. Ed. 2d 427 (1971).

*Caceres v. United States*, No. 13-22901-CIV, 2014 WL 5761112, *8 (S.D. Fla. Nov. 5, 2014). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74.

### 2. Discussion

In the alternative, the court finds that Jenkins's Motion to Vacate is due to be denied because his claims are without merit.

#### a. Incompetency

Jenkins contends:

> The Court imposed an 18 year sentence upon petitioner who, under 18 U.S.C. Section 4241[,][5] should [have] been committed to the custody of the

---

[5]Section 4241(a) states:

At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, or at any time after the commencement of probation or supervised release and prior to the completion of the sentence, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

18 U.S.C. § 4241(a). "If . . . the court finds by a preponderance of the evidence that the

Attorney General because there was a reasonable basis to believe that he may not [have] been competent to stand trial and able to assist counsel and a psychiatric evaluation was mandatory and counsel should [have] filed a motion for such and his not so doing denied petitioner of a fair trial and effective assistance of counsel under the Sixth Amendment of the United States Constitution[6] and for that reason his plea is void and conviction invalid.

(Doc. 1 ¶ 3 [footnote added].)

The standard for determining whether a criminal defendant is competent to stand trial

or plead guilty is well settled –

> Whether a defendant is not competent to plead guilty (or stand trial) depends on "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995) quoting *Dusky v. United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960). Not every manifestation of mental illness demonstrates that the defendant is incompetent; rather, the evidence must indicate a present inability to assist counsel or understand the charges. *Battle v. United States*, 419 F.3d 1292, 1299 (11th Cir. 2005).

*Rivera-Benito v. United States*, 657 Fed. Appx. 933, 934-35 (11th Cir. 2016).

Jenkins's counsel filed a Motion for a Hearing to Determine Defendant's Competency, (crim. doc. 21), and Notice of Intent to Assert Insanity Defense and Introduce Expert Testimony, (crim. doc. 22). Jenkins was provided funds for a psychological examination, (crim. docs. 10 and 11), although the results of this examination are not in the

---

defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General." 18 U.S.C. § 4241(d).

[6]Jenkins's claim that he was denied effective assistance of counsel is discussed *infra*.

record. However, the court notes that Jenkins has not alleged that this examination demonstrated he was incompetent to stand trial or that he was guilty but insane at the time of the offense. The court ordered Jenkins to undergo an examination by a forensic psychologist. (*See* crim. doc. 24.) According to the court-ordered psychological examination, Jenkins was "able to understand and appreciate the nature and wrongfulness of his actions [at the time of the offense] and could distinguish right from wrong." (Crim. doc. 26 at 7.) Also, the examination showed that Jenkins was competent to stand trial, but his competence was "dependent on continued compliance with prescribed medication." (*Id*.)

At the time he entered his plea and when he was sentenced, Jenkins was psychologically stable on prescribed medications. The court determined that he was competent and that his plea was knowing and voluntary. Jenkins's arguments to the contrary are unsupported by his conclusory allegations and the record.

Therefore, in the alternative, the court denies Jenkins's Motion to Vacate based on his alleged incompetency as without merit.

### b. Ineffective Assistance of Counsel

Jenkins argues, "His lawyer did not accurately present [his extensive mental-health history and the fact that he was suffering from a major mental illness when proceedings were instituted] to the Court and failed to explore insanity at the time of the [offense] and petitioner was, in fact, not guilty of the charge based on this valid defense." (Doc. 1 ¶ 2.)

He argues that "but . . . for his lawyer's unprofessional and ineffective assistance, he would [have] presented the issue and been acquitted by the Court under 18 U.S.C. section 4243."[7] (*Id.* [footnote added].)   The court disagrees.

"[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Pursuant to *Strickland*, "An ineffective assistance claim has two components:  A petitioner must show that counsel's performance was deficient, and [he must show] that the deficiency prejudiced the defense."  *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)(citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

"A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the

---

[7]Under [§ 4243], a defendant found [not guilty only by reason of insanity] is held in custody pending a court hearing, which must occur within 40 days of the verdict. [18 U.S.C.] § 4243(c).  At the conclusion of the hearing, the court determines whether the defendant should be hospitalized or released. §§ 4243(d), (e)." *Shannon v. United States*, 512 U.S. 573, 577 (1994).  Section 4243 does not define the insanity defense.  Section 17 defines the "insanity defense;" it states:

> It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts.  Mental disease or defect does not otherwise constitute a defense.

18 U.S.C. § 17(a).

identified acts or omissions were outside the wide range of professionally competent assistance." *Id*. at 690. "An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client as to the merits of each." *Stano,* 921 F.2d at 1151. In this case, Jenkins claims that his lawyer was ineffective because he failed to have him evaluated and failed to explore an insanity defense.

"In order to demonstrate prejudice from his lawyer's failure to have him evaluated, [petitioner] has to show that there was at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial." *Alexander v. Dugger*, 841 F.2d 371, 375 (11th Cir. 1988)(citing *Adams v. Wainwright*, 764 F.2d 1356, 1367 (11th Cir. 1985), *cert. denied*, 474 U.S. 1073 (1986)); *see also Richitelli v. United States*, No. 09-60229-CR, 2014 WL 12703109, at *1 (S.D. Fla. Aug. 4, 2014). The results of the court-ordered evaluation show that Jenkins was neither insane at the time of the offense nor incompetent to stand trial. Jenkins has not shown at least a reasonable probability that another evaluation showed otherwise or would have shown otherwise.

Also, contrary to Jenkins's allegations, his counsel investigated his mental health history, sought a psychological evaluation, filed notice of his intent to assert an insanity defense, and considered the results of the court-ordered evaluation. (Crim. docs. 10, 19-22, Doc. 6-7 at 2-3.) The court finds that Jenkins has failed to allege sufficiently deficient performance as everything he alleges counsel failed to do the record indicates counsel did.

Moreover, the results of the court-ordered psychological examination showed that Jenkins was competent to stand trial and that he was not insane at the time he committed the bank robbery. Jenkins offers only conclusory allegations to the contrary.

Therefore, the court finds that Jenkins has not established deficient performance or prejudice resulting from his attorney's alleged deficient performance. Thus, in the alternative to dismissal of Jenkins's claim of ineffective assistance of counsel as time barred, the court finds that Jenkins's claim is due to be denied as without merit.

### c. Race Discrimination

Jenkins argues that his sentence is "unjust" and excessive based on his race. (Doc. 1 ¶ 4.) He states:

> The sentence is excessive in that he was sentenced to more imprisonment based on race, not the crime. 18 years is excessive because [C]aucasian defendants charged with a simple, harmless ["]note["] robbery are not given anywhere near 18 years. This is discriminatory punishment imposed by the Court. The Court should have imposed a sentence of no more than Five (5) years.

(*Id.*)

Contrary to his assertion, Jenkins was not convicted of a "simple" and/or "harmless" note robbery. He was convicted of armed bank robbery in violation of 18 U.S.C. § 2113 (a) and (d). Subsection (d) states: "Whoever, in committing, or in attempting to commit, any offense defined in subsection[ ] (a) . . . of this section, assaults any person, or puts in jeopardy the life of any person by the ***use of a dangerous weapon or device***, shall be fined under this title or imprisoned not more than twenty-five years, or both." 18 U.S.C.

§ 2113(d)(emphasis added). In his Plea Agreement, Jenkins admitted that he told the teller during the robbery that he had a bomb and showed her a remote. Even though he had only a TV remote and he did not have an actual bomb, Jenkins's actions are sufficient to satisfy the "dangerous weapon or device" element of subsection (d). *United States v. Hanna*, 191 Fed. Appx. 921, 922, 923-24 (11th Cir. 2006)("Hanna argues that the evidence was insufficient to convict her of armed bank robbery because a remote control detonating device for a bomb is not a 'dangerous weapon' under the federal armed bank robbery statute. . . . That argument fails. When Hanna brandished a [fake] remote control device, after threatening to use such a device to detonate a bomb in the bank, she committed the same offense and caused the same harm as if she had brandished the bomb that she threatened to detonate." (citing *McLaughlin v. United States,* 476 U.S. 16, 18 & n.3 (1986); *United States v. Spedalieri,* 910 F.2d 707, 709 (10th Cir.1990); *United States v. Cooper,* 462 F.2d 1343, 1345 (5th Cir.1972))).

The statutory maximum under § 2113(d) is not more than 25 years. Based on Jenkins's criminal history and the fact that the instant offense carried a statutory maximum sentence of 25 years, his offense level was determined to be 34, USSG § 4B1.1(b)(B), less three levels for acceptance of responsibility, for a total offense level of 31. Because he was considered a career offender, his criminal history category was determined to be VI. *See* U.S.S.G. 4B1.1(b). Thus, the Guideline range for imprisonment was 188 to 235 months.

The court sentenced Jenkins to 216 months, 19 months below the high end of the Guideline range.

In this case, the court explicitly and expressly denies that Jenkins's race was considered. The violent nature of this crime and Jenkins's extensive criminal history were the determinative factors of his Guideline range and the court's determination of his appropriate sentence within that range – not his race. Therefore, in the alternative, Jenkins's claim that the sentence imposed was based on his race is denied as without merit.

## CONCLUSION

Based on the foregoing, the Motion to Vacate, filed by petitioner Quintin Ricardo Jenkins, (doc. 1; crim. doc. 37), is due to be denied and the Government's Motion to Dismiss, (doc. 6), is due to be granted. An Order denying the Motion to Vacate, (doc. 1), granting the Motion to Dismiss, (doc. 6), and dismissing Jenkins's habeas petition will be entered contemporaneously with this Memorandum Opinion.

## CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing § 2255 Proceedings, provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). And, the "certificate of appealability may issue . . . *only* if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2253(c)(2)(emphasis added). To make a substantial showing of the denial of a constitutional right, the applicant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)(citations and internal quotations omitted).

Jenkins's habeas petition is time-barred and without merit based on binding Eleventh Circuit precedent; reasonable jurists could not disagree. He has not demonstrated that the issues he raises are reasonably debatable and/or deserve encouragement to proceed further. Therefore, issuance of a certificate of appealability is not warranted in this case.

**DONE** this 24th day of January, 2018.

SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE